## MABIE v. SEYMOUR et al.

(Supreme Court, Special Term, Erie County. April, 1913.)

1. CORPORATIONS (§ 473*)—BONDS—RIGHTS OF HOLDERS.

　　Where the holders of the bonds of a defaulting quarry company deposited them with trustees to hold and use for the protection of the property mortgaged as security for their payment, either for the procuring of temporary working capital or in consenting to the creation of prior liens, or in the reorganization of the corporation, the trustees were not authorized to use the proceeds which they received on the bonds in creating a new corporation to take over the quarry.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1842–1853, 1855; Dec. Dig. § 473.*]

2. CORPORATIONS (§ 473*)—BONDS—RIGHTS OF HOLDERS.

　　The holders of the bonds of a failing corporation deposited them with trustees under an agreement that the expenses should be apportioned ratably upon the bonds deposited, but that the bondholders should not be called upon for any money except in case of the distribution of the bonds at the request of the holders of the majority. Part of the proceeds of the bonds were collected, and the trustees used such proceeds in organizing a new corporation to take over the property of the old

company. *Held,* that under the trust agreement, the bondholders not being liable for money for such a purpose, the trustees could not impose an assessment upon the holders and forfeit their rights in the bonds and proceeds for their failure to pay; the utmost that the trustees were entitled to do being to deduct their expenses and disbursements from the amount received, and then account to the bondholders, for the law does not favor a forfeiture.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1842–1853, 1855; Dec. Dig. § 473.*]

3. TRUSTS (§ 297*)—ACCOUNTING—FORM OF REMEDY.

Courts of equity have jurisdiction over actions for accountings and particularly in cases where an accounting is demanded of a trustee; for an action at law against a trustee, where the trust remains open, will not afford a complete remedy.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 416; Dec. Dig. § 297.*]

Action by Cornelia M. Mabie against Edmund Seymour and others. On demurrer to plaintiff's complaint by the defendants Seymour and Harvey, on the ground that complaint fails to state a cause of action. Demurrer overruled.

Wallace Thayer, of Buffalo, for plaintiff, opposed.

William L. Marshall, of New York City, for defendants Seymour and Harvey.

WHEELER, J. [1] This action is brought to compel the defendants to account for certain bonds deposited with them under the agreement set forth in the complaint and certificates issued to the plaintiff in accordance therewith. These instruments are as follows:

### "Agreement of Bondholders.

"Whereas, the Medina Quarry Company finds itself without sufficient working capital, and in urgent need of additional machinery and labor saving devices in its quarries, without both of which the company states it has been and is unable to operate at a profit and,

"Whereas, the company finds itself unable to pay its October, 1904, interest on its bonds:

"Now, therefore, we, the undersigned, for valuable consideration, covenant and agree with each other as follows:

"1st. We hereby do or forthwith will, transfer to and deposit with the bondholders' committee hereinafter named, all the first-mortgage bonds of the Medina Quarry Company held or owned by each of us, and hereby give to said company full authority to use said bonds for the protection and safeguarding of the property mortgaged as security for their payment, in such manner and to such extent as they may deem advisable for the best interest of the first-mortgage bondholders, viz.:

"Whether it be for procuring temporary working capital and equipment, not exceeding $150,000.00 for its present operations, or in consenting to the creation of prior lien certificates not exceeding in amount $250,000.00, or in the reorganization of the corporation in such manner or form as the committee may deem most expedient.

"2nd. The legal title of said bonds shall vest in said committee who shall issue to us negotiable and transferable certificates for the bonds deposited, which shall entitle the holder thereof to the interest of the original depositor. The expenses and advantages hereunder shall be apportioned ratably upon the bonds deposited, but the bondholders shall not be called upon for money except in the event specified in section seven.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"3rd. The action of the majority shall be deemed the act of the committee when in session; when not in session then by written instrument signed by all the committee. Any member of the committee may vote or act by proxy. Vacancies occurring by resignation or otherwise in the committee may be filled by a majority of the members remaining.

"4th. The committee shall have the power to employ such depositaries counsel, attorneys, agents or other employés as shall be deemed expedient and pay them reasonable compensation for their services and their disbursements, and the bonds of the parties hereinunder shall be charged with the payment of such compensation and expenses.

"5th. No member of the committee shall be personally responsible except for his own willful misconduct.

"6th. The said committee is hereby empowered to act either in its own name or in our names, one or more, and we hereby make, constitute and appoint such committee as our attorney in fact to do any and all things it may deem necessary to be done to carry out the intention and purpose of this instrument, hereby ratifying and confirming everything that it may do the same as though done by us in person.

"7th. Upon the written request of the holders of a majority of the said certificates outstanding, the committee shall, as soon as practicable after deducting all expenses and disbursements and satisfying all obligations incurred in accordance herewith. immediately make distribution to the present bondholders or their assigns, giving to each his proportionate part.

"8th. The committee hereinbefore referred to shall be constituted as follows: A. C. Tuxbury, James A. Roberts, Marcus. H. Phillips, Otis L. Williams, Edmund Seymour, William S. Harvey, M. D. Chapman, H. Le Roy Randall, Leonard H. Hole and Edward F. Fancher.

"In witness whereof we have hereunto set our hands and seals and set opposite thereto the amount of bonds owned and held by us respectively and their respective numbers, this sixth day of September, 1904.

| Name. | Amount of Bonds. | Number of Bonds. |
|---|---|---|
| Cornelia M. Mabie | $3,000.00 | 1320–1321–1322<br>1348–1349–1350 |

"No. 94        "Certificate of Bondholders' Committee.        $3,000.00

"This is to certify that Cornelia M. Mabie under the terms of the instrument of which the foregoing is a copy has deposited with the undersigned bondholders' committee of the Medina Quarry Company, first-mortgage bonds aggregating in amount $3,000.00, numbered 1320, 1321, 1322, 1348, 1349, 1350 with all unmatured coupons attached including that of October 1st, 1904, and that such bonds are held by the bondholders' committee upon the terms and conditions set forth in said instrument, and that the holder hereof with the holders of similar certificates is entitled to all the advantages to accrue thereunder.

"This certificate is negotiable and transferable, but only upon books kept by the bondholders' committee for that purpose and by the holder hereof in person or by attorney upon surrender of this certificate properly indorsed.

"In witness whereof, the said A. C. Tuxbury, James A. Roberts, Marcus H. Phillips, Otis A. Williams, Edmund Seymour, William S. Harvey, M. D. Chapman, H. Le Roy Randall, Leonard H. Hole and Edward F. Fancher, as a bondholders' committee, have caused this certificate to be signed by its chairman and attested by its secretary the 31st day of January, 1905.

"R. A. Gunn, Secretary.        L. H. Hole, Chairman." ·

For the purposes of this demurrer, we must assume all the facts alleged in the complaint as true.

The complaint alleges that the defendants received in all, as trustees for the plaintiff and other bondholders of the quarry company, about the sum of $288,269, which should have been applied by them in pay-

ment pro rata upon the bonds held by them as trustees, being about 30 per cent. of the face value of such bonds, and that the plaintiff's pro rata share of the sums so received was the full sum of $900. That, instead of paying to the plaintiff said sum of $900, the defendants, without her knowledge or consent, incorporated a new company known as the Orleans Quarry Company, and used the plaintiff's money and the rest of said $288,269 to purchase in behalf of said corporation the property of the Medina Quarry Company. That thereafter, and on the 25th day of January, 1911, the defendants called on the plaintiff to pay $200 per each $1,000 bond, upon the payment of which she was to receive $200 in first-mortgage bonds, $250 full-paid stock, and 6 per cent. profit-sharing debentures of $1,000. That she was unable to make said payments, and said defendants thereupon declared all her rights under the agreement forfeited.

The plaintiff prays the defendants be required to account for all property and money realized under the agreement. The two defendants named demur to the sufficiency of the complaint.

I think we must assume from the allegations of the complaint that the $288,269 was realized by the committee in money. That is the only interpretation to be placed on the allegations of the complaint. If that be true, I find nothing in the trust agreement which authorized the trustees to use such funds in organizing a new corporation and purchasing the property foreclosed.

It is true that by the first clause of the agreement the defendants were given "full authority to use said bonds for the protection and safe-guarding of the property mortgaged as security for their payment in such manner and to such extent as they may deem advisable for the best interest of the first-mortgage bondholders, viz.: Whether it be for procuring temporary working capital and equipment * * * *or in the reorganization of the corporation in such manner or form as the committee may deem most expedient."* Doubtless, if the trustees were compelled, or saw fit, to buy in the property mortgaged in the interest of bondholders, and to turn in the bonds deposited with them as part payment of the bid, they would not have exceeded the authority vested in them under the trust agreement. That would undoubtedly be a part of a legitimate plan of reorganization. If, however, the mortgaged property was sold for cash, and the committee in fact received $288,269 in money, subject to distribution, as alleged in the complaint, then nothing in the agreement set forth authorized them to form a new and independent corporation, and acquire and continue the business venture as alleged. The trustees, under such circumstances, were bound to distribute, and not to reinvest the funds received in a new venture. They can properly be held to account for the money received, and be compelled to distribute to the plaintiff her pro rata share when the exact amount has been judicially determined. We are therefore of the opinion that a cause of action has been stated.

[2] We might further observe that the complaint alleged that on the failure of the plaintiff to pay the $200 required on each $1,000 bond all her rights under the trust agreement were declared forfeited. The second clause of the trust agreement provides that:

"The expenses and advantages hereunder shall be apportioned ratably upon the bonds deposited, *but the bondholders shall not be called upon for money except in the event specified in section seven.*"

Section 7 provides:

"7th. Upon the written request of the holders of a majority of the said certificates outstanding, the committee shall, as soon as practicable after deducting all expenses and disbursements and satisfying all obligations incurred in accordance herewith, immediately make distribution to the present bondholders or their assigns, giving to each his proportionate part."

Construing these two clauses° together, they amount to simply this: That the expenses, etc., shall be apportioned ratably upon the bonds deposited, but the bondholders are not to become personally liable for such advances, and, when distribution is made, the trustees may deduct from the bondholder's ratable share of the expenses. Doubtless in equity the committee would be held to have a lien on any legitimate reorganization securities for the amount chargeable against such share, but the agreement imposed no personal obligation on the bondholder to pay such assessment. That is, the trustees could not sue and recover from the bondholder his share of the expenses, but could only look to the funds and securities in their hands for reimbursement, and to that extent are given an equitable lien thereon. If that be true, the most the committee could do would be, not to forfeit the bondholders' rights, but by proper proceeding to sell the securities held for the satisfaction of the claim, accounting to the bondholder for the money realized on such sale after the payment of such lien. The law does not favor forfeiture, and the right will not be sustained unless it clearly appears it has been conferred. Therefore we conclude that, if the defendants should establish that they had the right to acquire the quarry property through a new corporation, nevertheless the trustees could not repudiate the plaintiff's rights in the substituted securities, and declare them forfeited. They should foreclose those rights by proper sale after sufficient notice to redeem. It is one of the peculiar functions of equity to relieve against unauthorized forfeitures. 16 Cyc. p. 77.

[3] There are certain general rules of equity governing cases of this kind conferring jurisdiction on the courts to require an accounting. In the case of Marvin v. Brooks, 94 N. Y. at page 80, Judge Finch said:

"The best considered review of the authorities puts the equitable jurisdiction upon three grounds, viz.: The complicated character of the accounts; the need of a discovery; and the existence of a fiduciary or trust relation. 1 Story's Eq. Jur. § 459, and note 5. The necessity for a resort to equity for the first two reasons is now very slight, if it can be said to exist at all, since a court of law can send to a referee a long account, too complicated for the handling of a jury, and furnishes by an examination of the adverse party before trial, and the production and deposit of books and papers, almost as complete a means of discovery as could be furnished by a court of equity. But the jurisdiction of the latter court over trusts and those fiduciary relations which partake of that character remains, and in such cases the right to an accounting seems well established."

In Husted v. Thomson, 158 N. Y. 333, at page 335, 53 N. E. 20, at page 21, Judge Vann says:

"An action at law by beneficiary against trustee to recover a share of a trust estate is a hazardous venture. If the trust is still open, the accounts of the trustee unsettled, and the amount going to the particular beneficiary unknown, resort must be had to a court of equity. It is the peculiar province of that court to supervise the execution of trusts, the distribution of trust property, and the conduct of trustees in managing trust estates. With all interested persons before it, its decrees protect all interests and enforce all rights. It is not confined to an execution for the enforcement of its judgments, but with its varied and plastic process can compel performance of the precise act that the situation requires."

In Bosworth v. Allen, 168 N. Y. 157, at page 166, 61 N. E. 163, at page 165 (55 L. R. A. 751, 85 Am. St. Rep. 667), Judge Vann says:

"A court of equity has power, at the instance of the proper party, through its flexible and comprehensive action for an accounting, to inquire into every official act of the officers and directors, and, testing them by the standard of good faith and the absence of gross negligence, to compel restitution of property withheld with compensation for assets wasted, and to award damages for the natural consequences of official misconduct when such damages are claimed, in connection with equitable relief, on account of a general course of injurious action or a conspiracy to despoil a corporation. Even if part of the relief could be had in actions at law, still, when it is sought in connection with strictly equitable relief, such as the discovery of trust property and the recovery thereof, and the right to all relief springs from a common cause, such as a conspiracy, all may be included in the sweeping action for an accounting."

The demurrer is overruled, with costs of demurrer, with leave to demurring defendants to answer within 20 days after service of interlocutory judgment on payment of costs. So ordered.